GEORGIA BESS *et al.*, Individually and as Representatives of a Class, Plaintiffs-Appellees, *v.* DAVID DANIEL, Director, Cook County Department of Public Aid, *et al.*, Defendants-Appellants.

First District (2nd Division)    Nos. 61538, 76-606 cons.

Opinion filed September 7, 1976.—Rehearing denied October 29, 1976.

Bernard Carey, State's Attorney, of Chicago (Paul B. Biebel, Jr., and Fredric B. Weinstein, Assistant State's Attorneys, of counsel), for appellants.

Charles Barnhill, Jr., and Judson H. Miner, both of Davis, Miner & Barnhill, of Chicago, for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs, Georgia Bess, Hattie Payne, Marie Johnson, and Larvell Lemons, individually and on behalf of all others similarly situated, commenced this action against defendants, David Daniel, Director of the Cook County Department of Public Aid; Nolan Jones, Director of the State Department of Personnel; and Joel Edelman, Director of the Illinois Department of Public Aid. Plaintiffs sought compensation for overtime they had worked between September 12, 1968, and December 31, 1971, but for which they had not been adequately paid. After a trial without a jury, plaintiffs were found to be employees of Cook County, and Cook County was ordered to pay each member of the class a certain additional amount for the overtime each had worked. Defendant Daniel, Director of the Cook County Department of Public Aid (County), appeals from that judgment order. Plaintiffs have cross-appealed.

In its original brief, the County raised two issues for our review: (1) whether, prior to January 1, 1974, plaintiffs were employees of the State of Illinois or of Cook County; and (2) whether the State rather than the County is ultimately liable for compensating plaintiffs regardless of which entity is the actual employer. In its reply brief, the County presents three additional arguments why plaintiffs' claim for damages against the

County cannot be sustained. In their cross-appeal, plaintiffs raise a single issue for our review: whether the trial court's award of damages was inadequate. A summary of the relevant facts follows:

Plaintiffs were employed as "Homemakers." As homemakers, plaintiffs' duties entailed caring for persons on public aid, primarily children and the elderly, who were unable to care for themselves. During their assignments, plaintiffs were required to live in the homes of the public aid recipients. Because of the nature of their employment, an assignment to a particular recipient could be for a 24-hour period. In fact, a homemaker could be assigned to a particular home for up to 14 days, during which she was considered on duty 24 hours a day.

For this work, homemakers were paid as follows: each homemaker was assigned a monthly wage rate which was then broken down into a daily rate. This daily rate was what a homemaker was paid for the first 8 hours of each day she worked. On 24-hour assignment, a homemaker was paid for the additional 16 hours an amount equal to 15% of her daily rate. To illustrate: the average homemaker earned approximately $25 for an 8-hour day. If she worked an additional 16 hours, she earned an additonal $3.75, or approximately 23 cents for each of the additional 16 hours.

Defendant Daniel, the Director of the Cook County Department of Public Aid, testified that in his opinion the average homemaker on 24-hour assignment worked 16 hours and slept 8 hours. In an earlier internal memo, Daniel had also opined that homemakers should be paid for 16 hours. He had previously reviewed a recommendation of a grievance panel considering a homemaker's complaint regarding her overtime pay, and, at that time, had agreed that the compensation was unfair and inadequate. At trial, he again stated that a 15% increase (based on her 8-hour daily rate) for an additional 16 hours of work was inadequate.

At the conclusion of all the evidence, the trial judge found that homemakers were employees of Cook County and ordered the County to pay plaintiffs straight salary for 12 hours for each 24-hour day they had worked between September 12, 1968, and December 31, 1971.

In its original brief, the County first argued that the trial judge erred in finding that plaintiffs were employees of Cook County between September 12, 1968, and December 31, 1971. The County argued that prior to January 1, 1974, the Cook County Department of Public Aid was merely an administrative agent for the State of Illinois, and therefore, plaintiffs were employees of the State rather than of the County.

■■ However, subsequent to the filing of the County's brief, the Illinois Supreme Court decided *Merrill v. Drazek*, 62 Ill. 2d 1, 338 N.E.2d 164. In *Merrill*, the court was presented with the same issue presented here; the court was asked to determine the status of employees of the Cook County Department of Public Aid prior to January 1, 1974. After an

examination of all the relevant statutory provisions, the court concluded:

> "* * * although prior to January 1, 1974, the [Cook] County Department [of Public Aid] served as agent of the Illinois Department in the administration of its programs * * * the clearly expressed legislative intent was that its employees be employees of Cook County." (62 Ill. 2d 1, 7.)

The County now properly concedes that it can no longer be disputed that plaintiffs were employees of Cook County prior to January 1, 1974. We agree, and based on *Merrill*, conclude that the trial judge did not err in finding that plaintiffs were employees of Cook County.

The County's second argument is that, even though plaintiffs were employees of the County, the court erred in ordering the County to compensate plaintiffs since the State is ultimately liable to bear the financial burden. The County contends that section 12—5 and 12—18.4 of the Illinois Public Aid Code (Ill. Rev. Stat. 1971, ch. 23, pars. 12—5 and 12—18.4) require the State to reimburse the County for all expenses of the Cook County Department of Public Aid, and thus, the State must ultimately bear the burden of compensating plaintiffs.

■■ We find it unnecessary to determine whether the provisions of the Public Aid Code require the State to reimburse the County for "all expenses" of the County Department of Public Aid, or even to determine whether the State is ultimately liable for the salaries of the instant plaintiffs. Such an issue was not presented to the trial judge and was specifically not decided by the trial judge.

Plaintiffs sought relief against either the County or the State, whichever entity was found to be their employer. Whether the ultimate employer would have some recourse against another entity was of no concern to plaintiffs, and consequently, was not presented by plaintiffs' complaint.

That this was the posture of the case is clearly shown by comments of the trial judge both during the trial and during closing argument. During the trial, the trial judge commented:

> "* * * it seems to me that it's quite obvious from the evidence that this is a matter that involves the County and not the State of Illinois even though the County is being reimbursed for payroll * * *. I don't think the State is involved in this respect. If I should hold that the County owes these people a certain amount of additional money whether the County can then proceed against the State for additional reimbursement is a matter that could arise but that would not be a matter that's involved in this lawsuit."

Later, during closing argument, the trial judge again stated:

> "I have stated in the beginning of the hearing, I'll repeat it here again: I'm not conducting this hearing in connection with any

possible liability that the State of Illinois may have. This suit is proceeding on the basis of a claim against the County, not against the State.

Whether the County, if I should make an allowance of the overtime pay, is allowed a reimbursement of the State, is a matter that is not before me, and may have to be adjudicated in the Court of Claims. But that's between the County and the State."

The trial judge's final order reflected this attitude. While it held the County liable to plaintiffs, it did not adjudicate any liability as between the County and the State.

This court will not consider an issue which the trial court did not consider. It is well settled that we do not have the authority to consider a matter not passed on by the trial judge (*Trisko v. Vignola Furniture Co.* 12 Ill. App. 3d 1030, 299 N.E.2d 421; *Murphy v. Kumler*, 344 Ill. App. 287, 100 N.E.2d 660), or which the trial judge refused to consider. (*Board of Education v. Chicago Teachers Union*, 26 Ill. App. 3d 806, 326 N.E.2d 158.) It is apparent that the trial judge's final order adjudicated only the liability of plaintiffs and the County. Any additional issues are not properly before us. *Edelman v. Lee Optical Co.*, 24 Ill. App. 3d 216, 320 N.E.2d 517.

■■ We note that the County does not question the trial judge's refusal to adjudicate liability between it and the State. For it is clear from an examination of the pleadings that that issue was not presented by any of the parties. That is an issue that is exclusively a matter for resolution between the County and the State and is of no concern to plaintiffs. Our decision does not, in any way, foreclose the County from later pursuing any cause of action it may have against the State. We hold only that because the issue was not decided by the trial judge, it is not properly before this court.

In its reply brief, the County raises three additional arguments why the trial court's award of damages to plaintiffs cannot be sustained. Although we find all three arguments unpersuasive, it is sufficient to state that they are not properly before us. All three arguments were raised for the first time in the reply brief. It is well settled that new points cannot be raised for the first time in the reply brief. (Ill. Rev. Stat. 1973, ch. 110A, par. 341(g); *Holliday v. Shepherd*, 269 Ill. 429, 109 N.E.2d 976; *Maca v. Rock Island-Moline City Lines, Inc.*, 47 Ill. App. 2d 31, 197 N.E.2d 463.) Arguments raised for the first time in reply will not be considered. *Dear v. Locke*, 128 Ill. App. 2d 356, 262 N.E.2d 27; *Erickson v. Fitzgerald*, 342 Ill. App. 223, 96 N.E.2d 382.

We now turn to plaintiffs' cross-appeal. Plaintiffs contend that the trial judge's award of an additional four hours' compensation was inadequate

and not supported by the evidence. Plaintiffs argue that when they were on 24-hour assignment, they were actually "on call" for the full 24 hours, and thus, entitled to 24 hours' pay. In this regard, plaintiffs argue that, even if they were asleep for 8 of those hours, numerous Federal cases have held that sleep time is compensable time when one sleeps away from home and during sleep remains on call. Alternatively, plaintiffs argue that even if they are entitled to 24 hours' pay, defendant Daniel admitted that they work 16 hours, and thus they should be entitled to, at least, an additional 8 hours' compensation.

■■ In support of plaintiffs' argument regarding sleep time, we note that all the cases relied on are Federal cases construing the Fair Labor Standards Act (29 U.S.C. §201 *et seq.* (1970)). However, even conceding the applicability to the instant case of the general principles of law enunciated therein, we find no rule stating that sleep time is always compensable work time. For while several courts have concluded that sleep time can be compensable work time (*e.g., General Electric Co. v. Porter* (9th Cir. 1953), 208 F.2d 805; *Central Missouri Telephone Co. v. Conwell* (8th Cir. 1948), 170 F.2d 641), other Federal courts have concluded that sleep time is not compensable work time (*e.g., Bell v. Porter* (7th Cir. 1946), 159 F.2d 117; *Rokey v. Day & Zimmermann, Inc.* (8th Cir. 1946), 157 F.2d 734; *Eustice v. Federal Cartridge Corp.* (D. Minn. 1946), 66 F.Supp. 55). We conclude that the rule to be distilled from all the cases that have considered this question is that whether or not sleep time is compensable work time depends on the particular facts of each case. *Van Dyke v. Bluefield Gas Co.* (4th Cir. 1954), 210 F.2d 620; *Bowers v. Remington Rand, Inc.* (S.D. Ill. 1946), 64 F.Supp. 620, *aff'd* (7th Cir. 1946), 159 F.2d 114.

The general rule to be applied to each factual situation is that sleep time may be work time if it is subject to serious interruptions or takes place under conditions substantially less desirable than at the employee's home. But the mere fact that an employee must remain away from home and be "on call" is insufficient to render sleep time compensable work time. Annot., 44 A.L.R.2d 870, 871 (1955).

In the instant case, plaintiffs presented no evidence even suggesting that they actually "worked" for the entire 24 hours they might be in a recipient's home. Nor was any evidence presented indicating that their sleep time was regularly, or even occasionally, interrupted. And, although plaintiffs did testify that they were regularly assigned to homes in "housing projects," no evidence was adduced concerning the quality of the apartments actually visited or the quality of their own homes. In short, plaintiffs' claim for sleep time compensation rests entirely on their assertion that they were "on call" for the full 24 hours.

■■ Merely because plaintiffs were subject to call for emergencies in

the recipient's home is insufficient to render their sleep time compensable work time. Plaintiffs failed to present any evidence indicating why this general rule should not be applied. We conclude that the trial judge did not err in disallowing compensation for plaintiffs' sleep time.

Alternatively, plaintiffs argue that, on the undisputed evidence, they are entitled to at least 16 hours of pay for a 24-hour day, in other words, an additional 8 hours of pay. In this regard, plaintiffs rely on the testimony of defendant Daniel

At trial, defendant Daniel stated that, in his opinion, while plaintiffs were on 24-hour duty, they worked 16 hours and slept 8 hours. And in an internal departmental memo, he had also recommended that plaintiffs be paid for 16 hours' work. The County presented no evidence to contradict this testimony. Indeed, it would be difficult to do so in view of the fact that it was elicited from defendant's director.

The County responds to this argument by relying on certain remarks of the trial judge which evidence a concern that an award of an additional 8 hours' compensation would result in excessively high yearly salaries for plaintiffs. The County concludes that, because the trial judge considered an award of an additional 4 hours of compensation at the straight 8-hour daily rate to constitute appropriate and adequate compensation for plaintiffs, the award should be sustained.

■■ We first note that the trial judge had explicitly stated that he intended to review the numerous exhibits presented concerning the amount of additional compensation claimed by plaintiffs. The judge's remarks which the County now relies on were made before the trial judge had an opportunity to make that review. Moreover, representations have been made both in the briefs and during oral argument before this court that the final award of an additional 4 hours was not the result of the trial judge's independent determination, but rather, was the result of an agreement among the parties after long negotiations. Unfortunately, there is insufficient evidence in the present record to conclusively establish an agreement among the parties. Consequently, we cannot enforce such an agreement. We mention the possible existence of such an agreement only to put the able trial judge's final award in what appears to be its proper perspective.

■■ In any event, this court cannot ignore the undisputed evidence and must review the final order in light of the evidence actually presented. In light of defendant Daniel's admission that plaintiffs worked 16 hours during a 24-hour assignment and in the absence of any evidence to the contrary, we are compelled to conclude that the final order should have awarded plaintiffs an additional 8 hours' compensation rather than an additional 4 hours.

The final order is modified to award plaintiffs an additional 8 hours'

compensation based on their 8-hour daily rate, and, as modified, the judgment is affirmed.

Affirmed as modified.

HAYES and JIGANTI, JJ., concur.