SUBURBAN AUTO REBUILDERS, INC., Plaintiff-Appellant and Cross-Appellee, v. ASSOCIATED TILE DEALERS WAREHOUSE, INC., Defendant-Appellee and Cross-Appellant.

First District (2nd Division)   Nos. 1—07—3531, 1—08—0185, 1—08—0293 cons.

Opinion filed February 10, 2009.

DeGrand & Wolfe, P.C., of Chicago (Luke DeGrand, Tracey L. Wolfe, and Teresa F. Frisbie, of counsel), for appellant.

Barone & Jenkins, P.C., of Oakbrook Terrace (Anthony G. Barone and David M. Jenkins, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Suburban Auto Rebuilders, Inc. (Suburban), appeals from orders of the circuit court (1) granting summary judgment in favor of the defendant, Associated Tile Dealers Warehouse, Inc. (Associated), on count IV of Suburban's amended complaint and (2) denying Suburban's motion for leave to file a second amended complaint seeking recovery for rents previously paid to Associated pursuant to a lease. Associated has cross-appealed the circuit court's striking of its postjudgment petition for attorney fees. For the reasons that follow, we reverse each of these rulings and remand the cause to the circuit court for further proceedings.

The pleadings, depositions, admissions, and affidavits contained in the record reflect the following relevant facts. The claims underlying this litigation are premised on a lease executed on April 16, 1993, by Associated, as owner and lessor, and Suburban, as tenant. The leased property consisted of a parcel of commercial real estate located at 8444 Niles Center Road, Skokie, Illinois (the premises). Since the execution of the lease, Suburban has operated a family-owned, automobile-restoration business on the premises.

The lease contained a right of first refusal, which provided that "Landlord [Associated] will give Tenant [Suburban] First Right of Refusal if Landlord intends to sell the property. Landlord will give Tenant 30 day[s'] notice of intent and 48 hours to accept or decline any written offer Landlord may have."

Paragraph 19 of the lease sets forth the manner in which notices were to be given and stated as follows:

"Notices shall be in writing. The time of mailing shall be the time of notice.

(a) Notices shall be effectively served by Landlord [Associated] upon Tenant [Suburban] by forwarding through certified or registered mail, postage prepaid, to Tenant at the premises.

(b) Notice shall be effectively served by Tenant [Suburban] upon Landlord [Associated] when addressed to Landlord and served by forwarding through certified or registered mail, postage prepaid, to Landlord at 3232 Elston Ave., Chicago, Il. 60618 or if notified of another address by Landlord, at such latter address."

Paragraph six of the rider attached to the lease provided that the prevailing party in any dispute arising under the lease shall recover all costs and expenses, including reasonable attorney fees, from the nonprevailing party.

In February 2000, Suburban received a letter from Evelyn Allen, one of the principals of Associated. This letter, which was dated February 11, 2000, was printed on stationery bearing the letterhead of Evelyn Allen Realty with the address of 187 N. Marion, Oak Park, Illinois, and was addressed to Larry Chachko, a principal of Suburban, at 8025 Skokie Blvd., Skokie, Illinois. The letter stated, in its entirety, as follows:

"We have accepted a contract to purchase the above reference[d] property [8444 Niles Center Road, Skokie, Il.] for $600,000 without contingencies, except for a mortgage. You have 48 hours from [the] date and time of the delivery of this letter to match the offer or waive your right."

The letter did not indicate that a copy of the third-party contract was enclosed, and Suburban alleged that no such copy was included with the letter.

Suburban's attorney responded to this notice in a letter directed to Evelyn Allen at 187 N. Marion in Oak Park, stating as follows:

"Dear Mr. [sic] Allen:

As you know, the undersigned represents the Chachko[s] and Suburban Auto Rebuilders, Inc. My clients are in receipt of a contract [sic] wherein you purport to notify my clients of an acceptance of a contract on the property at 8444 Niles Center Road, Skokie[,] Illinois.

> My clients are hereby exercising their right of first refusal under their lease, however my clients must receive a copy of the offer and allow me to review the offer to determine the legitimacy of the offer. My client[s] will notify you of their decision of whether they choose to exercise their right of first refusal within 48 hours of my receipt of the written offer."

Although this letter bore a date of February 12, 2000, the printed notation at the top of the page indicated that it was sent by fax on February 28, 2000.

On February 29, 2000, Suburban's attorney directed another letter to Evelyn Allen at the Oak Park address, stating, in relevant part, as follows:

> "I previously wrote to you on February 12, 2000[,] requesting a copy of the contract to purchase the property located at 8444 Niles Center Road, Skokie[,] Illinois as well as notifying you that my clients were exercising their right of first refusal under their lease. To date, I have yet to hear from you. I can only surmise that there was no legitimate offer to purchase the property, because I do have proof that you received my correspondence of February 12, 2000.
>
> Please forward a copy of the contract to purchase the property immediately."

Also on February 29, 2000, J&K Construction, the third-party purchaser, declared its contract to purchase the property from Associated to be null and void.[1]

A subsequent letter from Evelyn Allen, dated March 2, 2000, notified Suburban that Associated had accepted a new contract for the sale of the premises at a price of $670,000 without contingencies except for the purchaser's ability to secure a mortgage equal to 50% of the purchase price. The letter also indicated that a copy of the tendered contract was enclosed and that Suburban had 48 hours from its delivery to match the offer or to waive its right of first refusal. As with the prior notification, this letter was printed on letterhead for Evelyn Allen Realty in Oak Park, Illinois, and was directed to Larry Chachko at 8025 Skokie Blvd. in Skokie, Illinois. That same day, Suburban's attorney responded to this notification by stating that Suburban had exercised its right of first refusal on February 12, 2000,

---

[1]In the prior proceedings before the circuit court, the third-party purchaser was referred to as "JFK Construction," and the contract it tendered to Associated on February 9, 2000, was referred to as the "JFK Contract." On remand, more legible copies of certain documents established that the potential purchaser was actually J&K Construction. Consequently, this third-party purchaser is referred by its correct name, and the contract submitted by this company is referred to herein as the "J&K contract."

and, as a consequence, had a binding agreement to purchase the property for $600,000.

On March 23, 2000, Associated informed Suburban that, as of April 1, 2000, rent payments and taxes were to be mailed to Associated at 187 N. Marion Street in Oak Park, Illinois. This letter made no reference to any change of address for notices required under the lease.

Suburban's attorney subsequently sent a letter, dated March 27, 2000, to Robert Andrew, counsel for Associated, again asserting that Suburban had exercised its right of first refusal on February 12, 2000, and had a binding agreement to purchase the property for $600,000 but had not received a contract.

On March 31, 2000, at 6:41 p.m., Associated's attorney faxed a letter to Suburban's attorney in which he stated that Suburban had previously failed to properly exercise its right of first refusal in the manner and within the time period set forth in the parties' lease. According to the letter, Suburban's purported exercise of its right of first refusal was ineffective because it was untimely and was sent by fax rather than by certified or registered mail, as required under the lease.

The letter stated that, despite these circumstances, Associated was still willing to sell the property to Suburban at a price of $600,000 and "pursuant to the terms of the contract that was signed by the potential buyers." This letter was accompanied by a copy of the J&K contract, which was executed by J&K Construction, as the purchaser, on February 9, 2000, and accepted by Associated, as the seller, on February 10, 2000.[2]

The letter further stated that "[i]n order for your clients to properly exercise their right of first refusal, your client must match the third party's offer exactly. *** If your acceptance does not, in every respect, meet and correspond to the terms proposed under the enclosed contract, my client will not consider it an effective exercise of your option under the lease[,] and no contract to purchase will be created between you and my client." In addition, the letter stated that, "[p]ursuant to the lease," Suburban had "48 hours to accept or decline the enclosed contract." This letter also stated that, without regard to the provisions of the J&K contract to the contrary, there would be no financing, inspection, or attorney approval contingencies in an agreement between the parties. The March 31, 2000, letter specifically

---

[2]A handwritten notation at the bottom of the contract indicated that 48-hour notice had been given to Suburban pursuant to the lease as of 3:55 p.m. on February 11, 2000.

referenced the notice provision of the lease, which required that notices to Associated were to be sent by certified or registered mail to 3232 Elston Avenue in Chicago, Illinois.

On April 5, 2000, Suburban's attorney sent by certified mail a letter addressed to Associated at 3232 N. Elston in Chicago, with a copy to Associated's attorney. This letter acknowledged receipt of the March 31, 2000, letter and the copy of the J&K contract. In his letter, Suburban's attorney stated that his clients "remain[ed] ready, willing and able to exercise their right of first refusal to purchase the property" and that his clients "will meet in every respect, the terms of the [J&K] contract."

Approximately five weeks later, counsel for Suburban sent another letter to Associated's attorney, again stating that his clients intended to exercise their right of first refusal to purchase the property and requesting that an executed contract be forwarded. On September 21, 2000, Suburban's attorney sent to Associated's counsel a written offer to purchase the property for $600,000 and a check for $1,000 as an earnest money deposit. In a letter dated October 19, 2000, counsel for Associated informed Suburban that his client had rejected the written offer to purchase the premises.

Thereafter, Suburban initiated this litigation and filed a six-count amended complaint, seeking to enforce its right of first refusal under the lease. Of relevance here, count IV of the amended complaint alleged that Suburban had performed all of the conditions that it was required to perform under the terms of the lease and had been ready, willing and able to proceed with the purchase of the premises, but Associated had refused to proceed with the sale. Suburban sought a judgment for specific performance, an injunction preventing Associated from leasing or conveying the property to anyone other than Suburban, and costs. Associated denied the substantive allegations in the amended complaint, and the parties filed cross-motions for summary judgment. The circuit court entered summary judgment in favor of Associated on counts I through IV of the amended complaint, and counts V and VI were voluntarily dismissed by Suburban.

On appeal, this court reversed the entry of summary judgment in favor of Associated on count IV and remanded the matter for further proceedings to resolve material questions of fact. *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, No. 1—05—1335 (2006) (unpublished order under Supreme Court Rule 23).[3] In

---

[3]We also affirmed the circuit court's entry of summary judgment in favor of Suburban on Associated's two-count amended counterclaim, which alleged that Suburban had failed to pay its portion of the real estate taxes on the premises as required by the lease.

particular, we held that there existed factual questions regarding (1) whether Associated had ever sent Suburban notice of the J&K contract in the manner provided in the parties' lease and (2) when Suburban actually received a copy of the letter sent to its attorney by fax on March 31, 2000. We concluded that, absent such evidence, there was no basis for determining when notice of the J&K contract was effective and whether Suburban's April 5, 2000, exercise of its right of first refusal was timely.

Following remand, the parties engaged in further discovery, including requests for admission, requests to produce, and depositions of the principal parties and their attorneys. Suburban filed a motion to amend its complaint to assert a claim seeking recovery for the rent it paid from the time of its exercise of the right of first refusal and the ultimate conveyance of the property. Although it was unopposed, the circuit court denied Suburban's motion, stating as follows:

> "I'm not going to allow you to amend the complaint. It's not proper. This comes to be heard before this court on a remand from the Appellate Court, and it was remanded on a specific issue of count four as it relates to specific performance. And when I say count four, I'm talking about count four of the complaint that's before us; and therefore, the jurisdiction of this court is limited to those issues that have been referred by the reviewing court. We're not going to start creating new issues and new litigation in this matter ***."

Suburban's motion for reconsideration of this ruling was denied.

Suburban also moved for summary judgment on count IV of the amended complaint, seeking specific performance and injunctive relief with regard to its purchase of the premises from Associated in accordance with the terms of the J&K contract. In its motion, Suburban contended that the evidentiary material adduced following remand answered the factual questions identified by this court in the earlier appeal and established that its exercise of the right of first refusal, sent to Associated and its attorney by certified mail on April 5, 2000, was timely and otherwise in compliance with the notice provision contained in the lease.

Suburban's motion for summary judgment was supported by the deposition testimony of Larry Chachko and Steven Cloh, Suburban's attorney, who both testified that a copy of the J&K contract was not included with the letter of February 11, 2000. They also stated that they did not see a copy of the J&K contract until mid-day on April 3, 2000, when the March 31, 2000, fax was actually received. In addition, the affidavit of Eda Chachko attested that she did not receive a copy of the J&K contract until it was provided to Suburban by its attorneys on April 3, 2000. Cloh explained that the reference to "receipt of a

contract'' in his February 12, 2000, letter was a typographical error. Larry Chachko testified that, when he received the February 11, 2000, letter, he immediately asked his attorney to obtain a copy of the contract and that, upon receiving a copy of the J&K contract on April 3, 2000, he instructed counsel to exercise Suburban's right of first refusal in accordance with the terms of the lease. Cloh testified that, in order to comply with the 48-hour deadline prescribed in the lease, he directed his secretary to take the April 5, 2000, certified letter to the Wilmette post office prior to 9 a.m. on that date. Suburban also relied on the deposition testimony of Evelyn Allen, who acknowledged that the attorney review and inspection contingencies included in the J&K contract constituted material terms of the agreement.

Associated opposed Suburban's request for summary judgment, asserting that there was ''a multitude of factual issues presented by the record.'' In support of this assertion, Associated relied, *inter alia*, on the deposition testimony of Robert and Evelyn Allen, who both testified that a copy of the J&K contract had been included with the February 11, 2000, letter, and upon documentary evidence indicating that the letter was hand delivered by a messenger service at approximately 4 p.m. on February 11, 2000, and was received by Eda Chachko at the leased premises. Associated also challenged the sufficiency of Suburban's evidence that the April 5, 2000, letter was timely mailed. In addition, Associated relied on the deposition testimony of Robert and Evelyn Allen in support of its claim that the March 31, 2000, letter was intended to extend a new offer to sell the property to Suburban for $600,000, without any contingencies, and did not constitute a notice of Suburban's right of first refusal to purchase the property in accordance with the terms of the J&K contract. Associated further contended that Suburban lacked standing to exercise the right of first refusal because it was not a party to the lease and was not incorporated until April 2000.

Following oral arguments on Suburban's motion, the court stated, ''I don't agree with the Associated argument that there [are] genuine issue[s] of material fact but I can't say as a matter of law that Suburban is entitled to specific performance so I'm going to deny the motion for summary judgment.'' In response to an inquiry as to how the cause should proceed, the court stated, ''I think Associated should file a motion for summary judgment.''

Thereafter, Associated filed a motion for summary judgment, raising substantially the same issues contained in its response to Suburban's motion for summary motion, but contending that there were no genuine issues of material fact that would preclude the entry of summary judgment in its favor. On November 26, 2007, following

briefing by both parties, the circuit court granted summary judgment in favor of Associated on count IV, stating as follows:

"I do find that there is no genuine issue of material fact as to the events that took place. In reviewing those facts it is clear that the Plaintiff Suburban exercised its right of first refusal beyond the 48-hour time period specified in the lease and changed the terms of the written contract from the third[-]party buyer."

Suburban filed a notice of appeal on December 17, 2007.

On December 21, 2007, Associated filed a petition for an award of attorney fees. The petition was premised on paragraph six of the rider to the lease, which provided that the prevailing party in any dispute arising under the lease shall recover all costs and expenses, including reasonable attorney fees, from the nonprevailing party. The circuit court struck the fee petition, finding that it lacked jurisdiction to consider it. Associated filed a notice of appeal on January 17, 2008. On January 28, 2008, Suburban filed a second notice of appeal, challenging the circuit court's grant of summary judgment in favor of Associated on count IV and the denial of its motion to file a second amended complaint. We subsequently ordered that the appeals be consolidated.

■ We initially address Associated's contention that Suburban lacks standing to seek enforcement of the right of first refusal because it was not incorporated at the time the lease was executed. This contention is without merit.

"[L]ack of standing in a civil case is an affirmative defense, which will be waived if not raised in a timely fashion in the trial court." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 508, 524 N.E.2d 561 (1988). As an affirmative defense, lack of standing must be raised within the time for pleading. 735 ILCS 5/2—619(a) (West 2006); *In re Custody of Ayala*, 344 Ill. App. 3d 574, 589, 800 N.E.2d 524 (2003); *In re Custody of K.P.L.*, 304 Ill. App. 3d 481, 486, 710 N.E.2d 875 (1999).

In this case, the record demonstrates that Associated investigated Suburban's corporate status in May 2000 and filed an answer to the amended complaint in May 2001. After engaging in extensive discovery, the parties filed cross-motions for summary judgment, the disposition of which resulted in our decision in the prior appeal. Associated did not contest Suburban's standing until after this court reversed the entry of summary judgment on count IV and remanded the cause for further proceedings. Consequently, Associated has forfeited its assertion that Suburban lacked standing to seek enforcement of the right of first refusal under the lease. See *Greer*, 122 Ill. 2d at 508.

■ We next consider Suburban's argument that the circuit court erred in granting summary judgment in favor of Associated on count

IV of the amended complaint. Because the propriety of an order granting summary judgment is a question of law, review of such an order is *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411, 615 N.E.2d 736 (1993).

Summary judgment is proper only where the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 2006). In considering whether summary judgment is appropriate, the court must construe the pleadings, depositions, admissions, and affidavits most strictly against the moving party and liberally in favor of the opponent of the motion. *In re Estate of Hoover*, 155 Ill. 2d at 410. Inferences which may reasonably be drawn from the evidence are to be resolved in favor of the party responding to the motion. *Cozza v. Culinary Foods, Inc.*, 311 Ill. App. 3d 615, 619-20, 723 N.E.2d 1199 (2000). A triable issue of fact exists where there is a dispute as to a material fact or where the facts are undisputed but reasonable minds might differ in drawing inferences from those facts. *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 31, 719 N.E.2d 756 (1999). Summary judgment is a drastic remedy to be granted only where the movant's right to it is clear and free from doubt. *In re Estate of Hoover*, 155 Ill. 2d at 410. If the record indicates that a material issue of fact exists or that the summary judgment was based upon an erroneous interpretation of the law, reversal is warranted. *In re J.H.*, 292 Ill. App. 3d 1102, 1103, 687 N.E.2d 105 (1997); *Zoeller v. Augustine*, 271 Ill. App. 3d 370, 374, 648 N.E.2d 939 (1995).

In granting summary judgment in favor of Associated on count IV, the circuit court found as a matter of law that Suburban exercised its right of first refusal beyond the 48-hour time period specified in the lease and "changed the terms of the written contract from the third[-]party buyer." Neither of these conclusions is affirmatively demonstrated by the record.

In order for Associated's notice of the right of first refusal to be effective, it must satisfy two requirements: it must comply with the notice provision contained in the lease, and it must fully disclose the material terms of the offer tendered by the third party. With regard to the first requirement, paragraph 19(a) of the lease mandates that Associated serve notice on Suburban by certified or registered mail at the leased premises. Associated claims that this lease term does not apply to notice of the right of first refusal. We implicitly rejected this assertion in our prior decision, and we do so explicitly now. Nothing in the lease suggests that the notice provision set forth in paragraph 19 does not apply to a notice of the right of first refusal. Where the terms

of a contract are clear and explicit, a reviewing court must enforce them as written. *Rakowski v. Lucente*, 104 Ill. 2d 317, 323, 472 N.E.2d 791 (1984). Accordingly, we hold that the lease required Associated to notify Suburban of offers to purchase the property by sending such notice by certified or registered mail to the leased premises.

Suburban argues that, in light of the undisputed evidence and Associated's admission that it never sent notice of the J&K contract by certified or registered mail to the leased premises, the circuit court's judgment must be reversed. We disagree.

Parties to a contract have the power to waive provisions placed in the contract for their benefit, and such a waiver may be established by conduct indicating that strict compliance with the contractual provisions will not be required. *In re Liquidation of Inter-American Insurance Co. of Illinois*, 329 Ill. App. 3d 606, 618-19, 768 N.E.2d 182 (2002); *Whalen v. K mart Corp.*, 166 Ill. App. 3d 339, 343, 519 N.E.2d 991 (1988). Here, the record establishes that Suburban repeatedly ignored Associated's lack of compliance with the notice provision contained in the lease. From February to April 2000, Associated sent Suburban multiple notices regarding offers to purchase the property. None of those notices were sent to the leased premises by certified or registered mail. Suburban consistently responded to these notices, despite the fact that they did not comport with the requirements set forth in paragraph 19(a). Based on these undisputed facts, we find that Associated's failure to comply with the notice provision is insufficient to justify reversal of the court's decision. See *In re Liquidation of Inter-American Insurance Co. of Illinois*, 329 Ill. App. 3d at 618-19.

The second requirement of full disclosure presents a thornier problem. In order for Associated's notice to adequately inform Suburban of its right of first refusal, it must either include a copy of the offer tendered by the third party or it must accurately and completely disclose all material terms of that offer. See *Vincent v. Doebert*, 183 Ill. App. 3d 1081, 1091, 539 N.E.2d 856 (1989) (holding that the notice of the right of first refusal was effective only after the holder of the right was notified of the true terms of the offer that the owners were willing to accept).

In this case, there is conflicting evidence as to when Suburban was informed of the actual terms of the J&K contract. It is undisputed that the February 11, 2000, letter alone did not accurately advise Suburban of the material terms of the offer tendered by J&K Construction. Of particular relevance here, that letter did not mention the 10-day attorney review provision or the 60-day inspection contingency, which Evelyn Allen acknowledged were material terms of the offer submitted by J&K Construction. In the absence of the J&K

contract, Suburban cannot be said to have received adequate notice of the tendered offer on February 11, 2000. Robert and Evelyn Allen testified at their depositions that a copy of the J&K contract was enclosed with the February 11, 2000, letter. However, Larry Chachko and Steven Cloh, counsel for Suburban, both testified that the February 11 letter did not include a copy of the J&K contract. In addition, the affidavit of Eda Chachko attested that she did not see a copy of the J&K contract until it was provided to her by counsel on April 3, 2000.

If the February 11, 2000, letter did include a copy of the J&K contract, then Associated's notice was effective on that date, and the April 5, 2000, letter from Suburban, purporting to exercise its right of first refusal was untimely.[4] Yet, if the February 11, 2000, letter was not accompanied by the J&K contract, then Suburban was not informed of the actual terms of the J&K offer until it received a copy of the contract with the March 31, 2000, letter from Associated's attorney. Based on the record before us, we are unable to decide when Associated's notice of the right of first refusal was effective.

Despite this conflicting evidence, Associated claims that the circuit court correctly determined that Suburban's exercise of its right of first refusal was untimely as a matter of law. Associated contends that, even if the J&K contract was not included with the February 11, 2000, letter, the record demonstrates that Suburban's response to the March 31, 2000, letter was not sent within 48 hours of that notice. In support of this contention, Associated relies on that portion of paragraph 19 that states "[t]he time of mailing shall be the time of the notice" and asserts that the 48-hour notice period began to run at 6:41 p.m. on March 31, 2000, when the notice was sent by fax to Suburban's attorney. We reject this assertion as manifestly unreasonable.

A contract should be construed as a whole, and such construction should be a natural and reasonable one. *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 330, 887 N.E.2d 878 (2008). In addition, contracts are interpreted objectively and must be construed in accordance with the ordinary expectations of reasonable people. *Carey v. Richards Building Supply Co.*, 367 Ill. App. 3d 724, 728, 856 N.E.2d 24 (2006). Courts will construe a contract reasonably to avoid absurd results. *Health Professionals, Ltd. v. Johnson*, 339 Ill. App. 3d 1021, 1036, 791 N.E.2d 1179 (2003).

---

[4]In the prior appeal, we held that Suburban's attempt to exercise the right of first refusal in the February 12, 2000, letter was not effective because it was not unconditional. *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, No. 1—05—1335 (2006) (unpublished order under Supreme Court Rule 23).

Under the right of first refusal contained in the lease, Associated was contractually obligated to give Suburban "48 hours to accept or decline [the] written offer" tendered by J&K Construction. In construing this provision, we find that the purpose of the 48-hour period is to provide Suburban an opportunity to consider the specific terms of the written offer and make an informed decision as to whether it will meet those terms. Acceptance of Associated's argument that the 48-hour period commences when the notice is sent would lead to an absurd result. If the notice of the right of first refusal is sent by certified or registered mail, as the lease requires, the entire 48-hour period could expire before Suburban ever received the notice. Under such circumstances, the notice period would be illusory and the right of first refusal effectively nullified. We decline to hold that the parties intended to allow for such a nonsensical result. In light of the fact that the lease allows for a relatively short period of time for Suburban to exercise its right of first refusal, we hold that the 48-hour notice period must commence when Suburban has received actual notice of the terms of the written offer. See generally *Vincent*, 183 Ill. App. 3d at 1091.

The record presents the undisputed deposition testimony of Steven Cloh and Larry Chachko, who both testified that Suburban first received a copy of the J&K contract at approximately 12 p.m. on April 3, 2000. Cloh also testified that, in order to comply with the 48-hour deadline prescribed in the lease, he directed his secretary to take the April 5, 2000, certified letter to the Wilmette post office prior to 9 a.m. on that date. The record does not, however, contain either deposition testimony or an affidavit by Cloh's secretary attesting to the fact that she delivered the certified letter to the post office prior to 12 p.m. on April 5, 2000. Therefore, there is insufficient evidence on which to base a finding as to when the April 5, 2000, letter was actually posted, and we are unable to conclude, as a matter of law, that it was untimely.

In urging affirmance of the circuit court's decision, Associated also claims that the March 31, 2000, letter constituted an entirely new offer to sell the property and that Suburban had no right of first refusal at that time because the J&K contract had been cancelled as of February 29, 2000. We have not found any Illinois cases to guide the analysis of this claim. However, other states have considered the question and held that a right of first refusal, which is not conditioned on the continued existence of the third-party offer, becomes an option to buy the property when the grantor decides to sell on the terms offered by the third party. See *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 226 (7th Cir. 1996) (applying Wisconsin law); *Peters v. Smuggler-Durant Mining Corp.*, 910 P.2d 34, 38 (Colo. App. 1995); *Vorpe v. Key*

*Island, Inc.*, 374 So. 2d 1035, 1036-37 (Fla. App. 1979); *Glick v. Chocorua Forestlands Ltd. Partnership*, 157 N.H. 240, 249-50, 949 A.2d 693, 701-02 (2008). We find the reasoning of these cases to be instructive here. In light of the fact that the right of first refusal contained in the lease was not made conditional upon the continued viability of the third-party offer, we reject Associated's contention that the termination of the J&K contract on February 29, 2000, necessarily extinguished Suburban's right of first refusal under the lease.

In addition, we note that the March 31, 2000, letter specifically stated that Associated was willing to sell the property to Suburban for $600,000 and "pursuant to the terms of the contract that was signed by the potential buyers." The letter further stated that "[i]n order for your clients to properly exercise their right of first refusal, your client must match the third party's offer exactly. *** If your acceptance does not, in every respect, meet and correspond to the terms proposed under the enclosed contract, my client will not consider it an effective exercise of your option under the lease[,] and no contract to purchase will be created between you and my client." Furthermore, the letter stated that, "[p]ursuant to the lease," Suburban had "48 hours to accept or decline the enclosed contract." We find that the record does not contain undisputed evidence clearly establishing that the letter of March 31, 2000, was not a notice of the right of first refusal but, rather, an entirely new offer to sell the property, independent of the J&K contract.

We also reject Associated's claim that the circuit court's judgment must be affirmed because the J&K contract lacked mutuality of obligation due to its inclusion of an attorney review provision. In general, an attorney review clause does not render a contract illusory or unenforceable. See *Patel v. McGrath* 374 Ill. App. 3d 378, 381, 872 N.E.2d 537 (2007). Rather, such a provision operates as a condition subsequent within the offer. *Patel*, 374 Ill. App. 3d at 381; *Hubble v. O'Connor*, 291 Ill. App. 3d 974, 979-80, 684 N.E.2d 816 (1997).

Contrary to Associated's assertion, the attorney review clause does not permit the parties to cancel the contract arbitrarily. Rather, the attorney review provision contained in the J&K contract states that counsel for each party can review the terms of the contract and make suggested modifications that do not relate to sales price, broker's compensation, or dates. The contract is subject to cancellation only if, within 10 days after acceptance of the contract, the parties are unable to agree on the proposed changes and written notice thereof is given. Also, the attorney review provision must be exercised in good faith (see *Denis F. McKenna Co. v. Smith*, 302 Ill. App. 3d 28, 32, 704 N.E.2d 826 (1998); *Groshek v. Frainey*, 274 Ill. App. 3d 566, 570, 654 N.E.2d

467 (1995); *Olympic Restaurant Corp. v. Bank of Wheaton*, 251 Ill. App. 3d 594, 600, 622 N.E.2d 904 (1993)), and any potential changes suggested by counsel are limited by the terms of the provision. Moreover, the record on appeal affirmatively establishes that Associated conceded that the terms of the J&K contract were acceptable, and Suburban's letter of April 5, 2000, indicated that it would meet the terms of that contract in every respect. Under these circumstances, we do not find that the J&K contract lacked mutuality or that Suburban could never be entitled to specific performance.

Because the record contains conflicting evidence as to when Associated's notice became effective and incomplete evidence as to when Suburban's letter of April 5, 2000, was actually placed in the mail, it cannot be said that Associated was entitled to judgment as a matter of law. Moreover, there is no evidence in the record to support the circuit court's finding that Suburban "changed the terms of the written contract from the third[-]party buyer." Accordingly, the court's decision cannot be affirmed on this alternative ground, and entry of summary judgment on count IV was improper.

█ We next address Suburban's contention that the circuit court erred denying its motion for leave to amend the complaint in order to seek recovery for the rent it paid after the alleged exercise of the right of first refusal. In urging reversal of this ruling, Suburban argues that the circuit court's decision was premised on an erroneous determination that it lacked jurisdiction to allow an amendment of the pleadings. We agree.

The circuit court has discretion in determining whether to allow an amendment to a complaint, and a reviewing court will not reverse the circuit court's decision absent an abuse of that discretion. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351, 781 N.E.2d 1072 (2002); *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74, 586 N.E.2d 1211 (1992). Yet, a trial court must exercise its discretion within the limits of the law. *Clemons*, 202 Ill. 2d at 351; *Loyola Academy*, 146 Ill. 2d at 274. Following a remand, the circuit court is obligated to exercise its discretion within the bounds of the remand. *Clemons*, 202 Ill. 2d at 351. Whether it has done so is a question of law, and a reviewing court decides that legal question *de novo*. *Clemons*, 202 Ill. 2d at 351-52.

A reviewing court is not required to provide specific directions in an order reversing a judgment and remanding a cause. *Clemons*, 202 Ill. 2d at 353. In such a case, the circuit court is required to examine the reviewing court's decision and to proceed in a manner that conforms with the views expressed therein. *Clemons*, 202 Ill. 2d at 353. Where a cause has been remanded without particular instruc-

tions, the circuit court is not precluded from allowing the plaintiff to amend or supplement his pleadings, as long as the amendment is not inconsistent with the legal principles expressed by the reviewing court. *Clemons*, 202 Ill. 2d at 352-53; *Golf v. Henderson*, 376 Ill. App. 3d 271, 281, 876 N.E.2d 105 (2007); *Merrill v. Drazek*, 58 Ill. App. 3d 455, 458, 374 N.E.2d 792 (1978).

In this case, our prior decision did not include specific instructions, nor did it indicate that the cause was remanded for the limited purpose of resolving the two identified factual questions. Rather, we held that judgment on count IV could not be granted as a matter of law while those questions remained unanswered. On remand, Suburban filed an unopposed motion for leave to amend its complaint to assert a claim seeking recovery for the rent it paid after it allegedly exercised its right of first refusal. Though a party's right to amend is not absolute or unlimited, circuit courts are encouraged to freely and liberally allow a party to amend the pleadings. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 467, 605 N.E.2d 493 (1992). A plaintiff is permitted to amend its pleadings to specifically state a damage claim, provided the amendment was not proscribed by the reviewing court's decision. *Merrill*, 58 Ill. App. 3d at 458. This court's general remand order did not restrict the court's jurisdiction to allow amendment of the pleadings, and Suburban's proposed amendment seeking recovery of rent was not inconsistent with the our prior ruling. Therefore, we find that the circuit court erred in determining that it lacked jurisdiction to permit Suburban's proposed second amended complaint.

■ We next address Associated's cross-appeal challenging the circuit court's refusal to consider its postjudgment petition for attorney fees. In striking the petition, the court stated that it lacked jurisdiction to consider it. We do not agree.

A circuit court retains jurisdiction for 30 days after its entry of a final order or judgment. *Brewer v. National R.R. Passenger Corp.*, 165 Ill. 2d 100, 105, 649 N.E.2d 1331 (1995). A circuit court has jurisdiction to entertain a petition for fees filed within 30 days of the entry of a final judgment without regard to a previously filed notice of appeal. *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 343-44, 757 N.E.2d 875 (2001); *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 468, 563 N.E.2d 459 (1990); *Servio v. Paul Roberts Auto Sales, Inc.*, 211 Ill. App. 3d 751, 759-60, 570 N.E.2d 662 (1991). In addition, a circuit court has jurisdiction to address a timely-filed fee petition regardless of whether the fee request is considered to be part of the original action or collateral to the original claim. *John G. Phillips & Associates*, 197 Ill. 2d at 343-44; *Marsh*, 138 Ill. 2d at 460; *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 453,

736 N.E.2d 179 (2000); *Berger v. Matthews*, 216 Ill. App. 3d 942, 944, 576 N.E.2d 1227 (1991); *Servio*, 211 Ill. App. 3d at 759-60. The filing of a postjudgment petition for fees renders a prior notice of appeal premature. *John G. Phillips & Associates*, 197 Ill. 2d at 343-44; *Marsh*, 138 Ill. 2d at 468-69; *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 984, 640 N.E.2d 1313 (1994); *Servio*, 211 Ill. App. 3d at 759-60.

In this case, Associated's petition for fees was timely filed within 30 days of the entry of summary judgment in its favor. The filing of Associated's fee petition rendered Suburban's December 17, 2007, notice of appeal premature. Therefore, Suburban's first notice of appeal did not deprive the circuit court of jurisdiction to rule on the petition for fees. *John G. Phillips & Associates*, 197 Ill. 2d at 343-44; *Marsh*, 138 Ill. 2d at 466-68; *Physicians Insurance Exchange*, 316 Ill. App. 3d at 453; *Berger*, 216 Ill. App. 3d at 944; *Servio*, 211 Ill. App. 3d at 758-60.

In addition, we reject Suburban's argument that Associated's failure to request attorney fees in its answer to the amended complaint precluded the court from ruling on the petition. A court can consider a postjudgment fee petition even where the request for fees has not been included in a prior pleading. See *In re Estate of Kunsch*, 342 Ill. App. 3d 552, 557, 794 N.E.2d 1059 (2003); *Hartford Fire Insurance Co. v. Whitehall Convalescent & Nursing Home, Inc.*, 321 Ill. App. 3d 879, 886-87, 748 N.E.2d 674 (2001); *Kinzer v. Fidelity & Deposit Co. of Maryland*, 273 Ill. App. 3d 211, 225-26, 652 N.E.2d 20 (1995); *Berger*, 216 Ill. App. 3d at 944; *Servio*, 211 Ill. App. 3d at 758-60; but see *F.H. Prince & Co.*, 266 Ill. App. 3d at 988 (holding that a circuit court is vested with jurisdiction to consider a claim for fees filed pursuant to a breach of contract when the complaint seeking fees as an element of damages is filed). For the reasons set forth above, we conclude that the circuit court incorrectly found that it lacked jurisdiction to consider Associated's postjudgment petition for attorney fees.

Our ruling on this issue should not be read as a conclusion that the court was obligated to award the fees requested. Indeed, in light of our reversal of the summary judgment on count IV and remand for further proceedings, Associated ultimately may not be the prevailing party entitled to seek attorney fees under paragraph six of the lease rider. We hold only that the circuit court erred in striking Associated's fee petition where that decision was based on a determination that the court lacked jurisdiction to consider the petition.

■ Finally, we observe that there is no impediment to our jurisdiction over the three consolidated appeals. Following the 2007 amendment of Supreme Court Rule 303(a), a notice of appeal filed before

entry of the final disposition of all pending claims "becomes effective" when the order disposing of said claims is entered. Ill. S. Ct. R. 303(a)(2) (eff. May 1, 2007). Here, Suburban's first notice of appeal was filed on December 17, 2007, after the amendment of Supreme Court Rule 303(a), and, therefore, became effective on January 10, 2008, when the circuit court struck Associated's petition for fees. Associated's appeal of that ruling was timely filed on January 17, 2008. Also, though it was not necessary to file a second notice of appeal in order to invoke our jurisdiction, Suburban did so on January 28, 2008.

For the foregoing reasons, we reverse the entry of summary judgment in favor of Associated on count IV of the amended complaint, reverse the denial of Suburban's request for leave to file a second amended complaint, reverse the striking of Associated's petition for attorney fees, and remand the cause to the circuit court for further proceedings.

Reversed and remanded.

SOUTH and CUNNINGHAM, JJ., concur.